# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

MARY MICHENZIE,

      Plaintiff,

v.

HEARTLAND FINANCIAL USA, INC.,
JOHN K. SCHMIDT,
BRUCE K. LEE,
ROBERT B. ENGEL,
THOMAS L. FLYNN,
JENNIFER K. HOPKINS,
CHRISTOPHER S. HYLEN,
MARGARET LAZO,
SUSAN G. MURPHY,
OPAL G. PERRY,
MARTIN J. SCHMITZ,
KATHRYN GRAVES UNGER,
DUANE E. WHITE,

      Defendants.

---

## COMPLAINT AND JURY DEMAND
## FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

---

Plaintiff, Mary Michenzie ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Heartland Financial USA, Inc. ("Heartland Financial" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to UMB Financial Corporation ("Parent"), through merger vehicle Blue Sky Merger Sub Inc. ("Merger Sub" together with Parent, "UMB"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an April 29, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Heartland Financial stockholders will receive a fixed exchange ratio of 0.55 shares of UMB common stock for each share of Heartland Financial common stock. This per share consideration is valued at $45.74 per share based on UMB's closing price of $83.17 on April 26, 2024. Following completion of this contemplated transaction, former Heartland Financial stockholders are expected to collectively represent approximately 31% of the combined company.

3.     Thereafter, on June 13, 2024, UMB filed a Form S-4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into an agreement which will provide little to no consideration to any Company stockholder and will significantly dilute the shares held by Plaintiff and other Company stockholders.

5.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement with the SEC in an effort to solicit public stockholders such as Plaintiff to vote her Heartland Financial shares in favor of the Proposed Transaction.

6.     The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Heartland Financial, provided to the Board, the Company's financial advisor Keefe, Bruyette & Woods, Inc. ("KBW"), and UMB's financial Advisor BofA Securities, Inc. ("BofA"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by KBW, and provided to the Company's Board and UMB; (d) the financial projections for UMB, provided to the Board, KBW, and BofA; and (e) the data and inputs underlying the financial valuations analyses, if any, that purport to support the fairness opinion created by BofA, and provided to the Company's Board and UMB.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Massachusetts and, at all times relevant hereto has been a Heartland Financial stockholder.

9.      Defendant Heartland Financial, a bank holding company, provides commercial, small business, and consumer banking services to individuals and businesses in the United States. Heartland Financial is incorporated in Delaware and has its principal place of business at 1800 Larimer Street, Suite 1800, Denver, Colorado 80202.  Shares of Heartland Financial common stock trade on the Nasdaq Capital Markets under the symbol "HTLF."

10.      Defendant John K. Schmidt ("Schmidt") has been the Chairman of the Company Board of Directors at all relevant times.

11.      Defendant Bruce K. Lee ("Lee") has been a director of the Company at all relevant times. In addition, Defendant Lee serves as the Company's President and Chief Executive Officer ("CEO").

12.      Defendant Robert B. Engel ("Engel") has been a director of the Company at all relevant times.

13.      Defendant Thomas L. Flynn ("Flynn") has been a director of the Company at all relevant times.

14.      Defendant Jennifer K. Hopkins ("Hopkins") has been a director of the Company at all relevant times.

15.      Defendant Christopher S. Hylen ("Hylen") has been a director of the Company at all relevant times.

16.      Defendant Margaret Lazo ("Lazo") has been a director of the Company at all relevant times.

17.     Defendant Susan G. Murphy ("Murphy") has been a director of the Company at all relevant times.

18.     Defendant Opal G. Perry ("Perry") has been a director of the Company at all relevant times.

19.     Defendant Martin J. Schmitz ("Schmitz") has been a director of the Company at all relevant times.

20.     Defendant Kathryn Graves Unger ("Unger") has been a director of the Company at all relevant times.

21.     Defendant Duane E. White ("White") has been a director of the Company at all relevant times.

22.     Defendants identified in ¶¶ 10 - 21 are collectively referred to as the "Individual Defendants."

23.     Non-party Parent and Non-party Merger Sub are wholly owned subsidiaries of Non-party Guarantor.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

27.    Defendant Heartland Financial, a bank holding company, provides commercial, small business, and consumer banking services to individuals and businesses in the United States. The company accepts various deposit products, including checking, demand deposit accounts, NOW accounts, savings, money market, and individual retirement; certificates of deposit; and other time deposits. It offers loans, including commercial and industrial, commercial real estate, agricultural, small business, and real estate mortgage loans; consumer loans comprising motor vehicle, home improvement, home equity line of credit, and fixed rate home equity and personal lines of credit; and credit cards for commercial, business, and personal use.

28.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the January 29, 2024, press release announcing its Fourth Quarter Results, the Company highlighted such milestones as: Loan growth of $196.2 million or 2%; Average customer deposits grew $270.7 million or 2%; Common equity ratio increased to 9.27%; Tangible common equity ratio (non-GAAP) improved 80 basis points to 6.53%; and Net interest margin, fully tax-equivalent (non-GAAP) improved 34 basis points to 3.52%.

29.     Speaking on these positive results, CEO Defendant Lee commented on the Company's positive financial results as follows, "2023 was a year of significant progress and successful execution of HTLF's strategic plans. With the completion of the charter consolidation initiative in the fourth quarter, we are now able to focus on HTLF 3.0, a set of initiatives that will drive improved efficiency, enhance EPS growth, deliver higher return on assets, and more efficient use of capital."

30.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Heartland Financial. Based upon these positive financial results and outlook, the Company is likely to have future success.

31.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Heartland Financial to enter into the Proposed Transaction without providing requisite information to the Company's stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to UMB.

33.     Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given.

34.     Moreover, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

35.     The Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and UMB and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners.

36.     In addition, the Registration Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

38.     On April 29, 2024, Heartland Financial and UMB issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> KANSAS CITY, Mo. and DENVER, April 29, 2024 (GLOBE NEWSWIRE) -- UMB Financial Corporation (Nasdaq: UMBF) and Heartland Financial, USA Inc. (Nasdaq: HTLF) announced today that they have entered into a definitive merger agreement under which UMB Financial Corporation (UMB) will acquire Heartland Financial USA, Inc. (HTLF), in an all-stock transaction valued at approximately $2.0 billion.

> Founded in 1981, HTLF is headquartered in Denver and has $19.1 billion in assets, $15.9 billion in total deposits and $12 billion in total loans, as of March 31, 2024. The combination of companies will create a leading, regional banking powerhouse, spanning a 13-state branch footprint, adding California, Minnesota, New Mexico, Iowa and Wisconsin to UMB's existing eight-state footprint, which includes Missouri, Illinois, Colorado, Kansas, Oklahoma, Nebraska, Arizona and Texas.

> "This is a historic and exciting milestone for our company," said UMB Financial Corporation Chairman and CEO Mariner Kemper. "While we have maintained an outstanding pace of organic growth during the past decade, this compelling combination with HTLF marks a truly momentous expansion of all our core services in both existing and new markets. This synergy, along with a like-minded culture and customer approach, is an ideal fit for our business model, our credit and risk profiles, and our associates, customers and communities."

This transaction, the largest in UMB's 111-year history, will result in UMB having $64.5 billion in assets, elevating it to the top 5% of the 616 publicly traded banks in the U.S. The transaction will increase UMB's private wealth management's AUM/AUA by 31% and nearly doubles its retail deposit base. It will also add 107 branches and 237 ATMs to UMB's 90 branches and 238 ATMs, dramatically expanding the network for both companies' customers.

"This acquisition further diversifies our business, adding more scale to our consumer and small business capabilities," Kemper said. "It also significantly expands our market share in several existing markets and leverages our commercial banking expertise to HTLF customers and prospects in our newly acquired markets."

Under the terms of the merger agreement, which were approved by the Boards of Directors of each company, HTLF stockholders will receive a fixed exchange ratio of 0.55 shares of UMB common stock for each share of HTLF common stock. This per share consideration is valued at $45.74 per share based on UMB's closing price of $83.17 on April 26, 2024. Following completion of this contemplated transaction, former HTLF stockholders are expected to collectively represent approximately 31% of the combined company. At the closing of the transaction, five members of the HTLF Board of Directors will join the UMB Board, which will be expanded to 16 members.

"HTLF's merger with UMB represents our continued focus on ensuring we deliver the best products, services and expertise to our customers," said Bruce K. Lee, HTLF President and CEO. "This is an excellent match for HTLF, and we're truly excited for what this means for our employees, customers, stockholders and communities."

Within its 11-state footprint, HTLF does business as: Minnesota Bank & Trust, Wisconsin Bank & Trust, Dubuque Bank & Trust, Illinois Bank & Trust, Bank of Blue Valley, Citywide Banks, Premier Valley Bank, Arizona Bank & Trust, New Mexico Bank & Trust and First Bank & Trust.

UMB is deeply invested in the communities in which it does business, providing support through products, services, and investments as well as corporate and associate giving. UMB is committed to being a strong financial steward and will share more information in the near future about how it will provide this support throughout its newly expanded footprint.

HTLF has 1,900 associates and UMB has 3,600. Until the transaction closes, the companies will continue to operate independently.

The transaction is subject to customary closing conditions, including regulatory approvals and approval by UMB shareholders and HTLF stockholders, and is expected to close in the first quarter of 2025.

***Potential Conflicts of Interest***

39.     The breakdown of the benefits of the deal indicates that Heartland Financial insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Heartland Financial.

40.     For example, Company insiders currently own company restricted stock units ("RSUs") and performance stock units ("PSUs"), all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Named Executive Officers | HTLF RSUs | HTLF PSUs | HTLF Options |
|---|---|---|---|
| Bruce K. Lee | $1,136,455 | $2,369,613 | — |
| Kevin L. Thompson | $ 170,601 | $ 0 | $ 0 |
| Jay L. Kim | $ 271,922 | $ 451,840 | $ 0 |
| David A. Prince | $ 286,369 | $ 587,010 | $ 0 |
| Kevin G. Quinn | $ 317,571 | $ 607,582 | $ 0 |

41.     In addition, employment agreements with certain Heartland Financial executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Named Executive Officers | Cash[1] | Equity[2] | Pension / NQDC[3] | Perquisites/Benefits[4] | Total |
|---|---|---|---|---|---|
| Bruce K. Lee | $4,636,507 | $3,506,068 | $ 0 | $ 397,838 | $8,540,413 |
| Kevin L. Thompson | $1,800,000 | $ 170,601 | $ 0 | $ 251,893 | $2,222,494 |
| Jay L. Kim | $1,197,775 | $ 723,762 | $ 4,932 | 158,711 | $2,085,180 |
| David A. Prince | $1,260,766 | $ 873,379 | $ 15,119 | 180,855 | $2,330,119 |
| Kevin G. Quinn | $1,439,891 | $ 925,153 | $ 0 | $ 207,094 | $2,572,138 |
| Bryan R. McKeag[5] | $ — | $ — | $ — | $ — | $ — |

42.     The Registration Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

43.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     Thus, while the Proposed Transaction is not in the best interests of Heartland Financial, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

45.     The Heartland Financial Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46.     The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

a. Adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given;

b. indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness;

c. Whether the confidentiality agreements entered into by the Company with UMB differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners; and

d. Any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

47.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Heartland Financial and UMB's Financial Projections*

48.     The Registration Statement fails to provide material information concerning financial projections for Heartland Financial provided to the Board, KBW, and BofA and relied upon by KBW in their discussions with the Company regarding the Proposed Transaction. The Registration Statement also fails to provide material information concerning financial projections for UMB provided to the Board, KBW, and BofA and relied upon by BofA in its discussion with UMB regarding the Proposed Transaction.

49.     Notably, the Registration Statement reveals that as part of its analysis, KBW reviewed, "publicly available consensus "street estimates" of HTLF, as well as assumed long-term HTLF growth rates provided to KBW by HTLF management, all of which information was discussed with KBW by such management and used and relied upon by KBW at the direction of HTLF management and with the consent of the HTLF board of directors."

50.     The Registration Statement further revealed that KBW also reviewed, "publicly available consensus "street estimates" of UMB, as well as assumed long-term UMB growth rates provided to KBW by UMB management, all of which information was discussed with KBW by such management and used and relied upon by KBW based on such discussions, at the direction of HTLF management and with the consent of the HTLF board of directors."

51.     Moreover, the Registration Statement reveals that as a part of its analysis, BofA reviewed, "certain publicly available financial forecasts relating to HTLF, referred to in this [Registration Statement] as the 'street estimates used by UMB for HTLF;'" as well as, "certain publicly available financial forecasts relating to UMB, referred to in this [Registration Statement] as the 'street estimates used by UMB for UMB'."

52.     The Registration Statement should have, but fails to provide, certain information in the projections that Heartland Financial management and UMB Management may have provided to the Board, KBW, and BofA.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

53.     With regard to the *Consensus "Street Estimates" used by HTLF*, the Registration Statement fails to disclose material line items:

    a.   Regarding the *Street Estimates used by HTLF for UMB*, disclose:

        i.   Total Assets, including the inputs, metrics, and assumptions used to determine the same;

        ii.   Net Income, including the inputs, metrics, and assumptions used to determine the same; and

        iii.   Earnings Per Share, including the inputs, metrics, and assumptions used to determine the same.

    b.   Regarding the *Street Estimates used by HTLF for HTLF*, disclose

        i.   Total Assets, including the inputs, metrics, and assumptions used to determine the same;

        ii.   Net Income, including the inputs, metrics, and assumptions used to determine the same; and

        iii.   Earnings Per Share, including the inputs, metrics, and assumptions used to determine the same.

54.     With regard to the *Consensus "Street Estimates" used by UMB*, the Registration Statement fails to disclose material line items:

    a.   Regarding the *Street Estimates used by UMB for UMB*, disclose:

        i.   Total Assets, including the inputs, metrics, and assumptions used to determine the same;

        ii.   Net Income, including the inputs, metrics, and assumptions used to determine the same; and

        iii.  Earnings Per Share, including the inputs, metrics, and assumptions used to determine the same.

    b.  Regarding the *Street Estimates used by UMB for HTLF*, disclose

        i.  Total Assets, including the inputs, metrics, and assumptions used to determine the same;

        ii.  Net Income, including the inputs, metrics, and assumptions used to determine the same; and

        iii.  Earnings Per Share, including the inputs, metrics, and assumptions used to determine the same.

55.    The Registration Statement fails to provide financials projections prepared by Company Management for both the Company and UMB, and to the extent that they are available, said projections should be disclosed.

56.    This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

57.    Without accurate projection data for Heartland Financial and UMB being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the exchange ratio, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning any Financial Analyses by KBW*

58.    In the Registration Statement, KBW describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions:

59.    With respect to the *Selected Companies Analysis* for both Heartland Financial and UMB, the Registration Statement fails to disclose the following:

a.   Regarding the *HTLF Selected Companies Analysis*, disclose:

i.   The underlying inputs, metrics, and assumptions used to determine the MRQ Core Return on Average Assets 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

ii.   The underlying inputs, metrics, and assumptions used to determine the MRQ Core Return on Average Tangible Common Equity 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

iii.   The underlying inputs, metrics, and assumptions used to determine the MRQ Net Interest Margin 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

iv.   The underlying inputs, metrics, and assumptions used to determine the MRQ Fee Income/ Revenue Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    v.   The underlying inputs, metrics, and assumptions used to determine the MRQ Noninterest Expense/ Average Assets 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    vi.   The underlying inputs, metrics, and assumptions used to determine the MRQ Efficiency Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    vii.   The underlying inputs, metrics, and assumptions used to determine the Tangible Common Equity/ Tangible Assets 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    viii.   The underlying inputs, metrics, and assumptions used to determine the Total Capital Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    ix.   The underlying inputs, metrics, and assumptions used to determine the Loans HFI/ Deposits 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    x.   The underlying inputs, metrics, and assumptions used to determine the Loan Loss Reserve/ Loans 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

    xi.   The underlying inputs, metrics, and assumptions used to determine the Nonperforming Assets/ Loans + OREO 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xii.   The underlying inputs, metrics, and assumptions used to determine the MRQ Net Charge-offs/ Average Loans 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xiii.   The underlying inputs, metrics, and assumptions used to determine the One-Year Stock Price Change 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xiv.   The underlying inputs, metrics, and assumptions used to determine the Year-to-Date Stock Price Change 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xv.   The underlying inputs, metrics, and assumptions used to determine the Price / Tangible Book Value per Share 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xvi.   The underlying inputs, metrics, and assumptions used to determine the Price/ 2024 EPS Estimate 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xvii.   The underlying inputs, metrics, and assumptions used to determine the Price/ 2025 EPS Estimate 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xviii.   The underlying inputs, metrics, and assumptions used to determine the Dividend Yield 25th percentile, Median, Average, and 75th Percentile for the Selected Companies; and

xix. The underlying inputs, metrics, and assumptions used to determine the MRQ Dividend Payout Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies.

b. Regarding the *UMB Financial Selected Companies Analysis*, disclose:

i. The underlying inputs, metrics, and assumptions used to determine the MRQ Core Return on Average Assets 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

ii. The underlying inputs, metrics, and assumptions used to determine the MRQ Core Return on Average Tangible Common Equity 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

iii. The underlying inputs, metrics, and assumptions used to determine the MRQ Net Interest Margin 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

iv. The underlying inputs, metrics, and assumptions used to determine the MRQ Fee Income/ Revenue Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

v. The underlying inputs, metrics, and assumptions used to determine the MRQ Noninterest Expense/ Average Assets 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

vi. The underlying inputs, metrics, and assumptions used to determine the MRQ Efficiency Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

vii.   The underlying inputs, metrics, and assumptions used to determine the Tangible Common Equity/ Tangible Assets 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

viii.   The underlying inputs, metrics, and assumptions used to determine the Total Capital Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

ix.   The underlying inputs, metrics, and assumptions used to determine the Loans HFI/ Deposits 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

x.   The underlying inputs, metrics, and assumptions used to determine the Loan Loss Reserve/ Loans 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xi.   The underlying inputs, metrics, and assumptions used to determine the Nonperforming Assets/ Loans + OREO 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xii.   The underlying inputs, metrics, and assumptions used to determine the MRQ Net Charge-offs/ Average Loans 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xiii.   The underlying inputs, metrics, and assumptions used to determine the One-Year Stock Price Change 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xiv.   The underlying inputs, metrics, and assumptions used to determine the Year-to-Date Stock Price Change 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xv.   The underlying inputs, metrics, and assumptions used to determine the Price / Tangible Book Value per Share 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xvi.   The underlying inputs, metrics, and assumptions used to determine the Price/ 2024 EPS Estimate 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xvii.   The underlying inputs, metrics, and assumptions used to determine the Price/ 2025 EPS Estimate 25th percentile, Median, Average, and 75th Percentile for the Selected Companies;

xviii.   The underlying inputs, metrics, and assumptions used to determine the Dividend Yield 25th percentile, Median, Average, and 75th Percentile for the Selected Companies; and

xix.   The underlying inputs, metrics, and assumptions used to determine the MRQ Dividend Payout Ratio 25th percentile, Median, Average, and 75th Percentile for the Selected Companies.

60.   With respect to the *Selected Transaction Analysis*, the Registration Statement fails to disclose the following:

a.   The specific date on which each selected transaction was consummated;

b.   The aggregate value of each selected transaction;

c. The underlying inputs, metrics, and assumptions used to determine the Price / Tangible Book Value per Share 25th percentile, Median, Average, and 75th Percentile for each of the Transactions analyzed including UMB and Heartland Financial;

d. The underlying inputs, metrics, and assumptions used to determine the Pay-to-Trade Ration 25th percentile, Median, Average, and 75th Percentile for each of the Transactions analyzed including UMB and Heartland Financial;

e. The underlying inputs, metrics, and assumptions used to determine the Price / LTM EPS 25th percentile, Median, Average, and 75th Percentile for each of the Transactions analyzed including UMB and Heartland Financial;

f. The underlying inputs, metrics, and assumptions used to determine the Price / Forward EPS 25th percentile, Median, Average, and 75th Percentile for each of the Transactions analyzed including UMB and Heartland Financial;

g. The underlying inputs, metrics, and assumptions used to determine the Core Deposit Premium 25th percentile, Median, Average, and 75th Percentile for each of the Transactions analyzed including UMB and Heartland Financial; and

h. The underlying inputs, metrics, and assumptions used to determine the One-Day Market Premium 25th percentile, Median, Average, and 75th Percentile for each of the Transactions analyzed including UMB and Heartland Financial.

61. With respect to the *Relative Contribution Analysis*, the Registration Statement fails to disclose the following:

a. The underlying metrics used to determine UMB's percentage of Total Pro Forma Ownership;

b.  The underlying metrics used to determine HTLF's percentage of Total Pro Forma Ownership;

c.  The underlying metrics used to determine UMB's Pre-Deal Market Capitalization;

d.  The underlying metrics used to determine HTLF's Pre-Deal Market Capitalization;

e.  The underlying metrics used to determine UMB's percentage of Total Assets;

f.  The underlying metrics used to determine HTLF's percentage of Total Assets;

g.  The underlying metrics used to determine UMB's percentage of Total Gross Loans Held for Investment;

h.  The underlying metrics used to determine HTLF's percentage of Total Gross Loans Held for Investment;

i.  The underlying metrics used to determine UMB's percentage of Total Deposits;

j.  The underlying metrics used to determine HTLF's percentage of Total Deposits;

k.  The underlying metrics used to determine UMB's percentage of Total Tangible Common Equity;

l.  The underlying metrics used to determine HTLF's percentage of Total Tangible Common Equity;

m. The underlying metrics used to determine UMB's percentage of Total Adjustable Tangible Common Equity (December 31, 2023 FMV Marks);

n.  The underlying metrics used to determine HTLF's percentage of Total Adjustable Tangible Common Equity (December 31, 2023 FMV Marks);

o.  The underlying metrics used to determine UMB's percentage of Total 2024 Estimated Net Income;

p.  The underlying metrics used to determine HTLF's percentage of Total 2024 Estimated Net Income;

q.  The underlying metrics used to determine UMB's percentage of Total 2025 Estimated Net Income; and

r.  The underlying metrics used to determine HTLF's percentage of Total 2025 Estimated Net Income.

62.  With respect to the *Financial Impact Analysis,* the Registration Statement fails to disclose the following:

a.  The underlying inputs, metrics, and assumptions used to determine that the merger could be accretive to each of UMB's estimated 2026 EPS and dilutive to UMB's estimated tangible book value per share at closing assumed as of March 31, 2025; and

b.  The underlying inputs, metrics, and assumptions used to determine that each of UMB's tangible common equity to tangible assets ratio, Tier 1 Leverage Ratio, Common Equity Tier 1 (CET1) Ratio, Tier 1 Capital Ratio and Total Risk-based Capital Ratio at closing assumed as of March 31, 2025, could be lower.

63.  With respect to the *Dividend Discount Model Analysis,* the Registration Statement fails to disclose the following:

a.  Regarding *HTLF Dividend Discount Model Analysis*, disclose:

i.  The underlying inputs, metrics, and assumptions used to determine the Discount rates ranging from 12.0% to 14.0% utilized; and

        ii.   The underlying inputs, metrics, and assumptions used to determine the multiples range of 7.5x to 11.5x utilized.

    b.   Regarding *UMB Dividend Discount Model Analysis*, disclose:

        i.   The underlying inputs, metrics, and assumptions used to determine the Discount rates ranging from 11.50% to 13.50% utilized; and

        ii.   The underlying inputs, metrics, and assumptions used to determine the multiples range of 9.0x to 13.0x utilized.

    c.   Regarding *Illustrative Pro Forma Combined Dividend Discount Model Analysis*, disclose:

        i.   The underlying inputs, metrics, and assumptions used to determine the Discount rates ranging from 11.00% to 13.00% utilized; and

        ii.   The underlying inputs, metrics, and assumptions used to determine the multiples range of 9.0x to 13.0x utilized.

64.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

65.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the Board's determination that the Proposed Transaction is in her best interests as a public Heartland Financial stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning any Financial Analyses by BofA*

66.     In the Registration Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions:

67.     With respect to the *UMB Financial Analyses*, the Registration Statement fails to disclose the following:

  a.    Regarding the *UMB Selected Publicly Traded Companies Analysis*, disclose:

    i.    The underlying inputs, metrics, and assumptions analyzed for each of the UMB selected publicly traded companies;

    ii.    The underlying inputs, metrics, and assumptions used to determine the EPS multiples of 8.1x to 15.8x observed for the UMB selected publicly traded companies;

    iii.    The underlying inputs, metrics, and assumptions used to determine the tangible book value per share ("TBVPS") multiples of 1.15x to 2.57x observed for the UMB selected publicly traded companies;

    iv.    The underlying inputs, metrics, and assumptions used to determine the 2024 EPS multiples of 9.5x to 11.5x utilized;

    v.    The underlying inputs, metrics, and assumptions used to determine the 2025 EPS multiples of 9.0x to 11.0x utilized; and

vi.   The underlying inputs, metrics, and assumptions used to determine the TBVPS multiples of 1.15x to 1.41x utilized.

b.   Regarding the *UMB Dividend Discount Analysis*, disclose:

i.   The underlying inputs, metrics, and assumptions used to determine the terminal forward multiples of 9.5x to 11.5x utilized; and

ii.   The underlying inputs, metrics, and assumptions used to determine the discount rates ranging from 9.6% to 11.6% utilized.

68.   With respect to the *HTLF Financial Analyses*, the Registration Statement fails to disclose the following:

a.   Regarding the *HTLF Selected Publicly Traded Companies Analysis*, disclose:

i.   The underlying inputs, metrics, and assumptions analyzed for each of the HTLF selected publicly traded companies;

ii.   The underlying inputs, metrics, and assumptions used to determine the 2024 Estimated EPS multiples of 9.8x to 22.5x observed for the HTLF selected publicly traded companies;

iii.   The underlying inputs, metrics, and assumptions used to determine the 2025 Estimated EPS multiples of 8.7x to 15.9x observed for the HTLF selected publicly traded companies;

iv.   The underlying inputs, metrics, and assumptions used to determine the TBVPS multiples of 0.80x to 2.06x observed for the HTLF selected publicly traded companies;

v.   The underlying inputs, metrics, and assumptions used to determine the 2024 EPS multiples of 7.5x to 11.5x utilized;

vi. The underlying inputs, metrics, and assumptions used to determine the 2025 EPS multiples of 7.0x to 10.5x utilized; and

vii. The underlying inputs, metrics, and assumptions used to determine the TBVPS multiples of 1.41x to 1.72x utilized.

b. Regarding the *HTLF Selected Precedent Transactions Analysis*, disclose:

i. The specific date on which each selected transaction was consummated;

ii. The aggregate value of each selected transaction;

iii. The underlying inputs, metrics, and assumptions used to determine the TBVPS multiples range of 0.44x to 3.06x for the target companies' or the selected transactions;

iv. The underlying inputs, metrics, and assumptions used to determine the One-Year Forward EPS multiples range of 7.9x to 21.3x for the target companies' or the selected transactions;

v. The underlying inputs, metrics, and assumptions used to determine the TBVPS multiples range of 1.35x to 1.65x utilized; and

vi. The underlying inputs, metrics, and assumptions used to determine the One-Year Forward EPS multiples range of 11.0x to 13.4x utilized.

c. Regarding the *HTLF Dividend Discount Analysis*, disclose:

i. The underlying inputs, metrics, and assumptions used to determine the terminal forward multiples of 7.5x to 11.5x utilized; and

ii. The underlying inputs, metrics, and assumptions used to determine the discount rates ranging from 9.7% to 11.7% utilized.

69.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

70.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the Board's determination that the Proposed Transaction is in her best interests as a public Heartland Financial stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

73.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or

consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

74.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

75.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

76.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

77.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

78.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

81.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

82.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Heartland Financial's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

83.     The Individual Defendants acted as controlling persons of Heartland Financial within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Heartland Financial to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Heartland Financial and all of its employees.  As alleged above, Heartland Financial is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein

not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 21, 2024                                    **BRODSKY & SMITH, LLC**

                                          By:     _/s/ Marc Ackerman_
                                                  Marc L. Ackerman
                                                  Two Bala Plaza, Suite 805
                                                  333 East City Avenue
                                                  Bala Cynwyd, PA 19004
                                                  Phone: (610) 667-6200
                                                  Fax:    (610) 667-9029
                                                  Email: mackerman@brodskysmith.com

                                                  *Counsel for Plaintiff*